TENNENT-STRIBLING SHOE COMPANY ET AL. *v.* MARY J. DAVIE ET AL.,

AND

MAMIE R. PRUIT *v.* TENNENT-STRIBLING SHOE COMPANY ET AL.

1. FRAUDULENT CONVEYANCE. *Evidence. Burden of proof. Suspicion.*

In a suit by a creditor to vacate a conveyance made by his debtor, a charge of fraud in the execution thereof will not justify the cancellation of a deed, if the charge be denied and unsupported by other evidence than such as merely excites suspicion.

2. SAME. *Defense of bona fide purchaser.*

In such case, until the fraud is shown by satisfactory evidence, at least to the extent of a *prima facie* case, the purchaser is under no duty to show that he bought in good faith.

FROM the chancery court of Noxubee county.

HON. A. M. BYRD, Chancellor.

The facts are stated in the opinion of the court.

*J. E. Rives*, for appellants and cross appellees.

I assert the following propositions, and insist that each one of them is maintained by the evidence. A careful consideration of the proof will show that appellants and cross appellees were entitled to the entire relief prayed for by them. My propositions are: (1) The sale of the land and of the stock of goods were parts and parcels of a scheme to defraud the creditors of Mrs. Davie; (2) the sale of the land by Mrs. Davie was fraudulent as to her creditors, and the pretended consideration therefor was in whole or part fictitious; (3) the sale of the stock of goods was fraudulent as to the creditors of Mrs. Davie; (4) Mrs. Fant participated in the fraud of Mrs. Davie in the sale of the land, and Mrs. Pruit had knowledge of the fraud, or of

sufficient facts to put her on inquiry, and she was not a *bona fide* purchaser; (5) Edwards knew of his vendor's fraud at the time of his purchase of the stock of goods, and participated in the fraud; certainly he was advised of facts which were sufficient to put him on inquiry, and he was not a *bona fide* purchaser; (6) the pretended sale of the stock of goods was executory, and was not completed at the time appellants and cross appellees acquired a lien on the property by filing their bill; (7) Edwards has never paid anything for the stock of goods; (8) the purchase money for the sale of the stock of goods, if any part of it was ever paid, was not paid, in whole or in part, until after appellants and cross appellees had acquired a lien on the goods by the filing of their bill. In support of these several propositions I invite the court's careful attention to the evidence, and to a consideration of the following authorities: *Allen* v. *Smith*, 72 Miss., 689; *Doe* v. *Dignowitty*, 4 Smed. & M., 74; Burrill on Assignment, sec. 311; Waite on Fraudulent Conveyances, secs. 13, 241, 242, 243, 271, 280, 281, 282, 369; *Richards* v. *Vaccaro*, 67 Miss., 519; Rice on Evidence, 112; *McLean* v. *Letchford*, 60 Miss., 169; *Hart* v. *Foundry*, 72 Miss., 809; Benjamin on Sales, sec. 870; *Berry* v. *Waterman*, 71 Miss., 497; *Smith* v. *Sparkman*, 55 Miss., 649; *Bowden* v. *Gray*, 49 Miss., 547; *Jordan* v. *Harris*, 31 Miss., 258.

*J. A. P. Campbell*, for appellee, Mrs. Fant, and cross appellant, Mrs. Pruit.

It will not do to let the cry of "fraud, fraud!" however vociferous, take the place of proof; and there must be more than relationship between the parties, and proximity of time between the transactions, to maintain the charge of fraud. These may be circumstances of more or less value, but can never be sufficient to supply the want of evidence.

*A. C. Bogle*, on same side.

The complainants must recover, if at all, upon the issue pre-

sented by their bill. *Colbert* v. *Henly*, 64 Miss., 377. The theory of the bill is that there was a scheme devised by and between Mrs. Davie and the other defendants to conceal the property of Mrs. Davie, so as to place it beyond the reach of her creditors. In order to maintain their case, they assumed the burden of proof to establish two things—first, that Mrs. Davie contemplated fraud, and, second, that her co-defendants knew of her intentions and aided her in consummating her fraudulent purpose. *Pope* v. *Andrews*, Smed. & M. Chy., 135; *Ladnier* v. *Ladnier*, 64 Miss., 373. Until this burden was met, at least *prima facie*, defendants were not called upon to make defense, save as made in the answer. The defense of *bona fide* purchaser for value is affirmative only in case a *prima facie* case has been made against defendants. *Fulton* v. *Woodman*, 54 Miss., 172; Waite's Fraudulent Conveyances, 158. This *prima facie* case is not made by creating mere suspicions. It can be made only by substantive facts showing the fraud alleged. *Tutner* v. *Chase*, 66 Miss., 476; *Allen* v. *Smith*, 72 Miss., 689; *Mitchell* v. *McDavit*, 70 Miss., 608.

Woods, C. J., delivered the opinion of the court.

In the latter part of March, 1897, the appellee, M. J. Davie, was the owner of a small mercantile business in the town of Macon, which was under the sole control and management of one R. M. Pruit, a son of Mrs. Davie by a former marriage. She was also the owner of two tracts of land, named and described in the pleadings, one of which, the larger, was under mortgage for the sum of $1,650, and the other, the smaller, was also under mortgage for the sum of $700. On March 29, 1897, Mrs. Davie conveyed both tracts of land, by separate deeds, to Mrs. Manie R. Pruit, her daughter-in-law, the wife of said R. M. Pruit, for a recited consideration, in the one case, of $1,350, cash in hand paid, and the assumption by the vendee of the mortgage debt of $1,650, and for a recited consideration, in the other case, of $710, in hand paid, and the assumption by

the vendee of the $700 mortgage debt thereon. On the same day, the purchaser of these lands, Mrs. Manie R. Pruit, executed a mortgage on all the lands acquired as just stated, in favor of Mrs. Annie E. Fant, to secure an indebtedness of $1,650, evidenced by Mrs. Pruit's promissory note of that date. Three days later, on April 1, R. M. Pruit, the son of Mrs. Davie, and her mercantile manager, sold the stock of goods in Macon to Mrs. M. E. Edwards, and delivered possession at once, Mrs. Edwards paying $500 cash down, and agreeing to pay the balance of the purchase price when the amount should be certainly ascertained by an inventory to be immediately taken.

On the second day of April the appellants exhibited their bill in the chancery court of Noxubee county, charging that these several sales of the land, and that of the stock of goods, were all parts and parcel of a fraudulent scheme devised by R. M. Pruit to put Mrs. Davie's property beyond the reach of her creditors, and that all the parties to these several transactions acted with knowledge of this fraudulent purpose, and assisted in the attempt to thus carry it out. The bill prays cancellation of the conveyances of the lands, and an annullment of the sale of the stock of goods.

All the parties answered, denying fraud or participation in, or knowledge of, any fraud, and averring that sales and purchases were made in good faith and for the considerations recited. Much evidence was taken, and, on final hearing, the court below found that the allegations of the bill touching the fraudulent character of the mortgage executed by Mrs. Pruit in favor of Mrs. Annie E. Fant, were not sustained, and that Mrs. Fant acted in good faith and without notice of any fraud on the part of Mrs. Davie or R. M. Pruit. The court also found that the allegations of the bill in regard to the sale of the stock of goods to Mrs. Edwards, were not sustained by the evidence, and that Mrs. Edwards was a *bona fide* purchaser for value and without notice of any fraudulent purpose on the part

of the seller.    The court further found that the allegations of
the bill as to the sale of the lands by Mrs. Davie to Mrs. Pruit,
were sustained by the evidence as to the recited consideration
of $710 in one of the conveyances from Mrs. Davie and Mrs.
Pruit, the court being of opinion that this consideration of $710
was fictitious and simulated.    The decree of the court accord-
ingly dismissed the bill as to Mrs. Fant and Mrs. Edwards,
taxing the complainants with two-thirds of the costs, and de-
clared Mrs. Pruit's title to the lands conveyed to her by Mrs.
Davie null and void.

From the decree in favor of Mrs. Fant and Mrs. Edwards
the complainants appeal; and from the decree vacating her
title, Mrs. Pruit prosecutes a cross appeal.

The gravamen of complainants' bill was the formation of a
fraudulent scheme, by Mrs. Davie and R. M. Pruit, to conceal
her property by false and pretended conveyances and sales,
whereby the property of Mrs. Davie would be placed beyond
the reach of her creditors and the participation in that fraud-
ulent scheme by the other respondents.    It was not enough to
charge this fraudulent scheme in vigorous phrase, nor enough
to produce evidence to support the charge, which raised mere
suspicion, but it rested upon complainants to clearly show the
frauds charged by satisfactory evidence.    Until that had been
done, to the extent at least of making a *prima facie* case, the
duty was not upon the respondents to show that their purchases
were made in good faith.

Now, the findings and decree of the court below necessarily
involved the proposition that the sweeping charges of the bill
as to the fraudulent scheme therein set out, were not supported
by the evidence, and the court only vacated the titles conveyed
to Mrs. Pruit by Mrs. Davie, because, in the court's opinion,
the recited consideration in one of those conveyances of $710
was fictitious.

We first dispose of the contention of appellants as to the
fraudulent character of the sale of the stock of goods to Mrs.

Edwards.    There is not one word in the transcript even tending
to show that Mrs. Edwards or her husband, who represented
her in that transaction, had any knowledge whatever of Mrs.
Davie's condition.    On the contrary, it affirmatively appears
that they had no knowledge of any sort.    The simple facts are
that R. M. Pruit proposed to sell to Mrs. Edwards because the·
business, as conducted, was unprofitable, and Mrs. Edwards
offered to buy, and did, on the next day, actually buy, at sixty
cents on the dollar, and all this without Mrs. Davie ever being
consulted, and without any knowledge of the contemplated sale,
on her part, until after it had been made.    That Mrs. Edwards
paid $500 of the purchase price, at the time of sale, to W. B.
Stewart, and the balance subsequently to Stewart, at Mrs.
Davie's direction, cannot be doubted, and that Stewart was her
creditor, for loaned money and by indorsement in bank, in a
sum far in excess of the purchase price of the goods, we have
no doubt.    The action of the court below in upholding this sale
was correct.    Indeed, we do not see how the court could have
found otherwise.

We come now to consider the action of the court in upholding
Mrs. Fant's rights as mortgagee, and in dismissing the bill as to
her.  In March, 1897, Mrs. Davie needed some money for her own
individual uses, and she desired to raise additional funds to fling
into the little mercantile maelstrom operated by her son. ·  Mrs.
Pruit was then desirous to collect from Mrs. Davie an alleged
debt of $710, before that, as is said, created by Mrs. Pruit
having loaned to Mrs. Davie (out of a loan of $1,000, clearly
shown to have been made Mrs. Pruit by the Georgia Building
& Loan Association) said sum of $710.    In this posture of
affairs, it appears that both Mrs. Davie and Mrs. Pruit con-
sulted A. C. Fant, Esq., a member of the Macon bar, and a
brother of Mrs. Pruit and a nephew of Mrs. Davie, as to what
should be done, and Mr. Fant undertook to effect a loan by
which the desires of his aunt and sister would be met.    The
plan was this: He applied to his mother, Mrs. Annie E. Fant,

to help, and she agreed to borrow, and did borrow, from one N. H. Harrison, $1,350, and mortgaged her own estate, wholly disconnected from any of the lands involved in this litigation, to secure the loan.　This $1,350 was to be loaned, and was loaned a few days later, to Mrs. Pruit, it being agreed upon as a part of this plan that Mrs. Davie should convey her two tracts of land to Mrs. Pruit, one for $1,350 cash and the assumption of the mortgage debt on it of $1,650, and the other for the $710 claimed by Mrs. Pruit to be due her for loaned money, as already stated by us, and the assumption of a mortgage debt of $700 resting on that place.　All this was accordingly done, whereby title to both tracts of land was vested in Mrs. Pruit and then conveyed in trust to Mrs. Annie E. Fant, to secure the loan of $1,350 made by her to Mrs. Pruitt.　The $1,350 was undisputedly paid to Mrs. Davie under this arrangement, and the $710 debt of Mrs. Davie to Mrs. Pruit canceled, if it was a real debt.

At the date of these transactions, it is important to note that neither of these three ladies had any knowledge of the condition of Mrs. Davie's mercantile business conducted by her son, R. M. Pruit.　It is also important to recall, in this connection, the evidence, which shows that Mr. A. C. Fant was the moving spirit in these transactions and that R. M. Pruit was not.　In fact, R. M. Pruit was only informed of the arrangement after it had been considered by the parties and Mr. Fant, and he then advised his wife, Mrs. Manie R. Pruit, against it.　We see nothing suspicious in the plan adopted, remembering what the objects to be attained were, as shown by the evidence, to wit: to enable Mrs. Pruit to collect her debt of $710, and to put Mrs. Davie in possession of some ready money.

It is true all these persons are nearly related by blood, and that the several conveyances were executed in Mrs. Fant's residence, and at, or about, the same time; but will these circumstances, thought to be suspicious, not only obviate the necessity of evidence to make good the charges of fraud, but overturn

all the answers denying all fraud, and the positive proofs demonstrating the good faith of these ladies ? We think not.

· We have said that at this date none of these appellees knew anything of the real condition of Mrs. Davie's mercantile business, and that Mrs. Davie purposed flinging the bulk of the $1,350 into the little mercantile maelstrom where so much of her funds had already been swallowed up. But before putting in the last dollar she had on earth, Mrs. Davie prudently concluded to ascertain the condition of her business at the store. She did so, and there first learned that it was hopelessly ruined. She then wisely determined not to part with all she had left, and kept the money intended for the store to meet her daily wants. Without this money the store could not go on, and Stewart, a creditor for loans and indorsements to about $2,000, learning of the land sales, began to want his money, and the sale to Mrs. Edwards took place, as hereinbefore detailed, whereby Stewart was paid in part.

In all these land transactions we find nothing that would authorize a court of equity to cancel Mrs. Fant's mortgage security, regardless of the validity or invalidity of the $710 debt claimed to be due from Mrs. Davie to Mrs. Pruit. The title to the lands was then in Mrs. Pruit, and Mrs. Fant's conduct is free from all suspicion of fraud.

We are thus brought to consider the cross appeal of Mrs. Pruit. The court below, in effect, found that there was no such scheme to defraud as that charged in the bill, but canceled Mrs. Pruit's title to both tracts of land because a part of the consideration recited in one of the deeds of conveyance, viz., $710, was fictitious and simulated. We infer, from all the record, that this action was based upon a statement contained in Mrs. Pruit's deposition that the $710 was loaned several years ago; and the statement in Mr. Dent's deposition that, at the time the loan of $1,000 was made by the Georgia Building & Loan Association, R. M. Pruit, the husband of cross appellant, said that the loan was desired in order to replace that

amount in the mercantile business, which had been taken out in building a house for Mrs. Pruit.

It is manifest, from repeated examinations of the transcript, that Mrs. Pruit confounded this $710 loan with an earlier loan, made about 1894, of $571.65. She did make this last named loan in 1894, and she made the $710 loan in January, 1897. She was simply mistaken, and, woman-like, confused and confounded the two loans.

That Mrs. Pruit actually loaned to Mrs. Davie's mercantile business the $710 in January, 1897, is affirmed more than once by R. M. Pruit, and his deposition is distinctly shown to be true by Mrs. Davie's check book, and by statements from the books of the Merchants' & Farmers' Bank. This fact is too plain to admit of controversy.

Now, granting that R. M. Pruit said to Dent what is shown in Dent's deposition, yet this may be readily reconciled with Pruit's statements contained in his deposition that the $710 had not been paid out of the store, or otherwise, on March 29, when Mrs. Pruit purchased the lands from Mrs. Davie, and in this manner: In the fall of 1896, the $571.65 loan, with interest at 10 per cent. from 1894, was paid out of the store, in cash and merchandise, and the little business depleted to this extent, and this may have made, and doubtless did make, R. M. Pruit anxious to replace the considerable sum thus withdrawn from the mercantile business in paying for the erection of the house on Mrs. Pruit's lot in Macon. This affords a just and reasonable explanation of Pruit's statement to Dent, and is the only explanation reconcilable with the other evidence in the case. But not only R. M. Pruit says this was a *bona fide* debt of $710, Mrs. Pruit says so under oath, and though clearly mistaken as to date of this loan, she is powerfully corroborated by the documentary evidence furnished from the books of the bank. Where is the satisfactory evidence that this debt is fictitious? We have failed to find it.

*The decree on direct appeal is affirmed, and on cross appeal is reversed and the cause remanded.*